JEFFREY D. NADEL, ESQ., SBN 193012
16000 VENTURA BL. STE. 908
ENCINO, CA 91436
818-784-4914
ATTORNEY FOR DEFENDANTS,
MASTER MOVING. INC., and
BATIA ZELIG

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW ROJESKI, and ASHELYN ROJESKI<br><br>Plaintiffs,<br><br>vs.<br><br>MASTER MOVING. INC., and BATIA ZELIG<br><br>Defendants. | Case No. 2:25-cv-01741-DSF-ADS<br><br>DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT<br><br>DATE:　　JULY 14, 2025<br>TIME:　　1:30 P.M.<br>CRTRM:　7D<br><br>Hon. Dale S. Fisher, Judge<br><br>Action filed February 15, 2024 |

　　　PLEASE TAKE NOTICE, Defendants, MASTER MOVING. INC., and BATIA ZELIG move this court to DISMISS the above-captioned action pursuant to this Motion. The Motion will be heard July 14, 2025 at 1:30 p.m. before the Honorable Dale S. Fisher, Judge, in Courtroom 7D of the First Street Courthouse, 350 West 1st Street, Los Angeles, California 90012.

　　　Defendants MASTER MOVING. INC., and BATIA ZELIG now submit this Memorandum of Points and Authorities in support of its FRCP 12(b)(6) Motion. This 12(b)(6) Motion will be based on this Notice, Memorandum of Points and Authorities, the Complaint, and any reply to any opposition and any arguments or evidence that

1  may be provided should argument be requested.

2      This motion is being filed following efforts by the attorneys for Defendant both
3  in writing and by telephone messages to have the conference of counsel pursuant to
4  L.R. 7-3. Following e-mails, messages, and a telephonic meet and confer, with e-mails
5  summarizing the requests, the final discussion was May 2, 2025 where it was agreed
6  Defendants would file this Motion. On May 13, 2025, counsel all agreed on the July
7  14, 2025 hearing date.

                        Respectfully submitted,

                        */s/ Jeffrey D. Nadel*

DATED:    May 14, 2025        By: _____
                                              JEFFREY D. NADEL, ATTORNEY FOR DEFENDANTS MASTER MOVING. INC. and BATIA ZELIG

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . 3

I.   SUMMARY OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II.   FEDERAL LAW PREEMPTS PLAINTIFFS' CALIFORNIA STATUTORY AND COMMON LAW CLAIMS. . . . . . . . . . . . . . . . . . . . 3

III.   THE BILL OF LADING IS THE CONTRACT BETWEEN THE PARTIES AND ITS PROVISIONS AND LIMITATIONS ON LIABILITY CONTROL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    A. The Bill of Lading is a Contract the Provisions of Which Cannot Be Disputed by Parol Evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    B. A Bill of Lading's Limitations on Liability are Enforceable. . . . . . . . . . 5

IV.   PLAINTIFF CANNOT PROCEED ON CONVERSION OR RELATED COMMON LAW CAUSES OF ACTION. . . . . . . . . . . . . . . . . . . . . . . . 6

    A.   Plaintiff's Claims for Conversion and related Claims are Preempted by the Carmack Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    B.   The RICO Claims are Preempted and not Properly Pleaded . . . . . . 7

V.   THE PREEMPTIVE EFFECT OF FEDERAL LAW SURROUNDING INTERSTATE MOVES PRECLUDES STATE LAW CLAIMS. . . . . . . . 9

VI.   FEDERAL, STATE, AND INTERNATIONAL POLICY SUPPORT THE LIMITATION OF LIABILITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

VII.   THE POLICY OF LIMITING LIABILITY IS TO KEEP TRANSPORTATION COSTS LOW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

VIII.   NO PERSONAL LIABILITY OF DEFENDANT BATIA ZELIG FOR ACTS ALLEGED . . . . . . . . . . . . . . . . . . . . . . . 11

IX.   THE POLICY TO DISMISS APPLIES IN THIS CASE . . . . . . . . . . . . 14

X.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

**CASES**

*Adams Express Co. v. Croninger*,
 226 U.S. 491; 33 S. Ct. 148; 57 L. Ed. 314 (1913) . . . . . . . . . . . . . . . 4, 6, 10

*Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir.1989). . . . . . 8

*Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir.1988) . . . . . . . . . . . . . . . . . . . . . . . 9

*AT & T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir.1996). . . . 13

*Automotriz Del Golfo De California S.A. De C.V. v. Resnick*,
 47 Cal.2d 792, 796, 306 P.2d 1 (1957). . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Bauer v. Jackson*, (1971) 15 Cal. App.3d 358 . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Bedig v. Southern Pac. Co.*, (1927) 84 Cal.App.325; 258 P. 148. . . . . . . . . . . . 4, 5

*City of Pomona v. Superior Court* (2001) 89 Cal.App.4th 793, 803 . . . . . . . . . . . 8

*Cleveland v. Beltman N. Am. Co.*, 30 F.3d 373, 377 (2d Cir. 1994)148. . . . . . . . . 4

*Glickfeld v. Howard Van Lines*, (9th Cir. 1954) 213 F.2d 723 . . . . . . . . . . . . . . . 6

*Gordon v. United Van Lines, Inc.* 130 F.3d 282, 289 (7th Cir. 1997). . . . . . . . . . . 7

*Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258; 112 S.Ct. 1311;
 117 L.Ed.2d 532 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Hopper Furs, Inc. v. Emery Air Freight Corp.*,
 749 F.2d 1261, 1264 (8th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Hughes Aircraft v. N. Am. Van Lines, Inc.*,
 970 F.2d 609, 610, 613 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Hughes v. United Van Lines, Inc.*,
 829 F.2d 1407, 1415 (7th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645. . . . . . . . . . . . . . . . . . . . . . . 8

*Lombardo v. Santa Monica Young Men's Christian Assn.*
 (1985) 169 Cal.App.3d 529 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Lopez v. Smith*, 203 F. 3d 1122, 1127 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . 14

## TABLE OF AUTHORITIES (continued)

*Mesler v. Bragg Management Co.*, 39 Cal.3d 290, 300 (1985) . . . . . . . . . . . . . . . 12

*Moffit v. Bekins Van Lines Co.*, 6 F.3d 305, 307 (5th Cir. 1993). . . . . . . . . . . . . . 4

*Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft, LLP*,
    69 Cal.App.4th 223, 249-50, 81 Cal.Rptr.2d 425 (1999) . . . . . . . . . . . . . 13

*New York Cent. R. Co. v. Buck Co.*, (1935) 2 Cal.2d 384; 41 P.2d 547 . . . . . . . . . 5

*Philipson & Simon v. Gulsvig* (2007) 154 Cal.App.4th 347, 363. . . . . . . . . . . . . . 8

*Rini v. United Van Lines, Inc.*, 104 F.3d 502, 505 (1st Cir. 1997). . . . . . . . . . . . . 4

*Roberts vs. North American Van Lines, Inc.*, (2004) 394 F. Supp. 2d 1174 . . . . . . 9

*S. Glass Co. v. Consol. Inv. Corp.*, 1 Cal. App. 2d 510, 511-512 (1934) . . . . . . . 12

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479; 105 S.Ct. 3275;
    87 L.Ed.2d 346 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*Shao v. Link Cargo (Taiwan) Ltd.*, 986 F.2d 700 (4th Cir. 1993) . . . . . . . . . . . 4, 7

*Sonora Diamond Corp. v. Superior Court*,
    83 Cal.App.4th 523, 526, 99 Cal.Rptr.2d 824 (2000) . . . . . . . . . . . . . . . . 12

*Smith v. United Parcel Serv., Inc.*, 296 F.3d 1244, 1246-47 (11th Cir. 2002). . . . . 4

*Tarmann v. State Farm Mut. Auto. Ins. Co.*
    (1991) 2 Cal.App.4th 153, 157. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Underwriters at Lloyds of London v. N. Am. Van Lines, Inc.*,
    890 F.2d 1112, 1113 (10th Cir. 1989) (en banc) . . . . . . . . . . . . . . . . . . . . 4

*VirtualMagic Asia, Inc. v. Fil-Cartoons, Inc.*,
    99 Cal.App.4th 228, 245, 121 Cal.Rptr.2d 1 (2002) . . . . . . . . . . . . . . . . 13

*W.D. Lawson & Co. v. Penn Cent. Co.*, 456 F.2d 419, 421 (6th Cir. 1972) . . . . . . 4

*Zoran Corp. v. Chen*,
    185 Cal.App.4th 799, 811-12, 110 Cal.Rptr.3d 597 (2010) . . . . . . . . . . . 13

//
//

**TABLE OF AUTHORITIES (continued)**

**STATUTES - FEDERAL**

18 U.S.C. § 1961 .................................................... 9

18 U.S.C. § 1962. ................................................. 8-9

18 U.S.C. § 1964 .................................................... 9

49 U.S.C. Section 11706 ............................................. 3

49 U.S.C. Section 14704 ............................................. 9

49 U.S.C. Section 14706 ......................................... 3, 5-6

46 U.S.C., App. Section 1304(5) .................................... 11

**STATUTES - STATE**

*California Business and Professions Code § 17200* ............... 9-10

*California Civil Code § 1750* ...................................... 9

*California Civil Code § 1624* .................................. 12-13

**RULES**

FRCP Rule 9(b) ...................................................... 8

FRCP 12(b)(6) ....................................................... 1

**REGULATIONS**

14 CFR § 254.4 ..................................................... 11

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. SUMMARY OF FACTS

Plaintiffs' Complaint arises out of an interstate shipment of their property from Oregon to West Virginia (Compl. ¶ 10). This case is therefore governed exclusively by the Carmack Amendment, preempting state law claims in the Complaint.

The Complaint states causes of action for (1) Carmack Amendment Claim(re: Binding Estimate) (2) Carmack Amendment Claim (re: Falsifying Documents) (3) Carmack Amendment Claim (re: Failure to Deliver); and (4) Violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO").

The bill of lading (contract for transportation) never was attached to the Complaint, nor does the pleading describe any valuation or "released value" for the shipment. The minimum level of liability for a carrier is set at 60 cents per pound per article, unless a valuation for higher limits is contracted. The Estimate attached by Plaintiffs confirm this liability.

The Complaint alleges overcharges. The claims are governed by the Carmack Amendment due to the interstate nature of the shipment, which bars plaintiffs' various statutory common law claims. Plaintiffs have attempted to manipulate Defendants' purported charges and non-delivery claims into claims beyond the Carmack Amendment, which are unsupported by facts and laws. The Carmack Amendment bars most of plaintiffs' theories, and plaintiffs' damages are limited to the actual losses sustained to their property. The other statutory and common law claims cannot prevail.

## II. FEDERAL LAW PREEMPTS PLAINTIFFS CALIFORNIA STATUTORY AND COMMON LAW CLAIMS

In 1906, Congress enacted the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. Sections 11706, and 14706 (the former applicable to railway, the latter to motor vehicle) which provides that an interstate carrier is liable for the shipper's actual loss where goods delivered to the carrier by the shipper are

damaged or lost in transit. Act of June 29, 1906, ch. 3591, 34 Stat. 584; *Adams Express Co. v. Croninger*, 226 U.S. 491; 33 S. Ct. 148; 57 L. Ed. 314 (1913), citations omitted. The Carmack Amendment preempts state and common law remedies against interstate carriers. Even when the shipper and carrier have contracted for specific rates and conditions, the Carmack Amendment even preempts claims for breach of contract and negligence for goods damaged or lost by carriers. *Id.*; *see also, Bedig v. Southern Pac. Co.*, (1927) 84 Cal.App.325; 258 P. 148.[1] Plaintiffs' claims for Violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and any Carmack claim over the released value amount are therefore barred.

The First, Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Courts of Appeal have held that the Carmack Amendment preempts state law claims pertaining to shippers and carriers in interstate commerce. *See Rini v. United Van Lines, Inc.*, 104 F.3d 502, 505 (1st Cir. 1997); *Cleveland v. Beltman N. Am. Co.*, 30 F.3d 373, 377 (2d Cir. 1994); *Shao v. Link Cargo (Taiwan) Ltd.*, 986 F.2d 700, 706 (4th Cir. 1993); *Moffit v. Bekins Van Lines Co.*, 6 F.3d 305, 307 (5th Cir. 1993); *W.D. Lawson & Co. v. Penn Cent. Co.*, 456 F.2d 419, 421 (6th Cir. 1972); *Hughes v. United Van Lines, Inc.*, 829 F.2d 1407, 1415 (7th Cir. 1987); *Hopper Furs, Inc. v. Emery Air Freight Corp.*, 749 F.2d 1261, 1264 (8th Cir. 1984); *Hughes Aircraft v. N. Am. Van Lines, Inc.*, 970 F.2d 609, 610, 613 (9th Cir. 1992); *Underwriters at Lloyds of London v. N. Am. Van Lines, Inc.*, 890 F.2d 1112, 1113 (10th Cir. 1989) (en banc); *Smith v. United Parcel Serv., Inc.*, 296 F.3d 1244, 1246-47 (11th Cir. 2002).

## III. THE BILL OF LADING IS THE CONTRACT BETWEEN THE PARTIES AND ITS PROVISIONS AND LIMITATIONS ON LIABILITY CONTROL

---

[1] Bedig held "the liability of a common carrier for loss, damage, or injury to an interstate shipment, as well as the validity of a stipulation in the contract of carriage relating to liability, is exclusively a federal question to be determined by reference to the federal statutes and decisions."

### A. The Bill of Lading is a Contract the Provisions of Which Cannot Be Disputed by Parol Evidence.

The Bill of Lading is not only a receipt for goods delivered by the shipper to the carrier, but also constitutes the contract between the parties. *See, Bedig, supra*, 84 Cal.App. at 336; 258 P. at153 *New York Cent. R. Co. v. Buck Co.*, (1935) 2 Cal.2d 384; 41 P.2d 547 (to ascertain the terms of the contract between the shipper and the carrier, the bill of lading, which is both a receipt and a contract, must be primarily relied upon). The Bill of Lading therefore may not be explained or contradicted by parol evidence and must be construed according to its terms. *Bedig, supra*, 84 Cal. App. at 336, 258 P. at153; See also, *Lombardo v. Santa Monica Young Men's Christian Assn.*, (1985) 169 Cal.App.3d 529, 539; 215 Cal. Rptr. 224, 229-230.[2] Indeed, once signed and issued, the rights and obligations of the parties are fixed by the bills of lading. *Bedig*. at 334, 258 P. 152.[3] Moreover, "the fact that bills of lading are not signed by the shipper is immaterial." *Id.*

### B. A Bill of Lading's Limitations on Liability are Enforceable.

Section 20(11) of the Carmack Amendment (49 U.S.C. § 14706(a)) requires common carriers to issue a receipt or bill of lading for property received for interstate transportation, and imposes liability for any loss, damage, or injury to such property. A proviso to the Amendment allows a carrier to establish and maintain rates dependent upon the value declared in writing by the shipper or agreed on in writing

---

[2] *Lombardo* explained that the parol evidence rule bars extrinsic evidence which contradicts terms of a written contract. It is not a rule of evidence but is one of substantive law and extrinsic evidence is excluded because it cannot serve to prove what the agreement was, because as a matter of law it is the writing itself

[3] In *Bedig*, the court allowed admission of parol evidence because it was not offered to vary the terms of the written bill of lading nor to show the authority to sell and convey property, but rather was received solely to establish an alleged agency to load and bill cars on the plaintiff's bond and to transfer the bills of lading therefor. *Id.* at 336.

as the released value of the property. Such limitations shall have the effect of a limitation of liability and recovery to an amount not exceeding the value so declared or released. *Bauer v. Jackson*, (1971) 15 Cal. App.3d 358, 367; 93 Cal. Rptr. 43, 48; *Glickfeld v. Howard Van Lines*, (9th Cir. 1954) 213 F.2d 723[4] The Bill of Lading herein limits the defendants' liability to $.60 per pound for damaged, delayed, lost or destroyed property of plaintiffs. Plaintiffs agreed to this limitation as evidenced by the bill of lading, referenced with the Complaint.

## IV. PLAINTIFFS CANNOT PROCEED ON CONVERSION OR RELATED COMMON LAW CAUSES OF ACTION

### A. Plaintiffs' Claims for RICO are Preempted by the Carmack Amendment

It is well settled that the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706, governing a carrier's liability for loss or damage to goods shipped in interstate commerce, is preemptive of all state law remedies. The Supreme Court in *Adams Express Co. v. Croninger* 226 U.S. 491; 33 S. Ct. 148; 57 L. Ed. 314 (1913), discussed the preemptive effect of the Carmack Amendment in regard to state regulation of carrier liability and stated:

> Almost every detail of the subject is covered as completely that there can be no rational doubt that Congress intended to take possession of the subject and supersede all state regulation with reference to it. ... But it has been argued that the non-exclusive character of this regulation is manifested by the proviso of the section, and that state legislation upon the same subject is not superseded, and that the holder of any such bill of lading may resort to any right of action against a carrier conferred by existing state law. This view is untenable. It would result in the nullification of the regulation of a national subject and operate to maintain the confusion of the diverse regulation which it was the purpose of Congress to put an end to.

226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314 (1913).

---

[4] In Glickfeld, the shipper asked for and was quoted the lowest rate and was unconcerned with further details for the reason he was himself insuring against possible shipment losses and thus the absence of a provision in the bill of lading or a declaration of excess value on specific items was of no primary importance. The shipper got what he bargained for and the carrier got what it was entitled to under the statute. 213 F.2d at 727.

6

In *Hughes v. United Van Lines* 829 F.2d 1407, 1412 (7th Cir. 1987), the Court held that the Carmack Amendment preempted a plaintiff's claims for negligence, breach of contract, conversion, intentional misrepresentation, negligent misrepresentation, and negligent infliction of emotion distress where his goods were destroyed by a fire while in transit. *Id*. Plaintiffs attempt to bring common law claims against defendants for damages which they claim directly resulted from the interstate transportation of goods, and the storage of those goods necessitated by the events of the carriage. Without regard to the manner in which the damage occurred, or the events that unfold during or after the transportation, the Carmack Amendment preempts all other remedies and controls the rights and liabilities of all parties. Thus, the Carmack Amendment preempts Plaintiff's claim of conversion.

In *Gordon v. United Van Lines, Inc.* 130 F.3d 282, 289 (7th Cir. 1997), the court held: "State law claims for losses or damage to the cargo, however, whether described under a contract theory or a tort theory, are preempted by the Carmack Amendment." *See also, Shao v. Lunk Cargo (Taiwan) Ltd.,* 986 F.2 700 (4th Cir. 1993) stating "[T]he Carmack Amendment was intended by Congress to create a national uniform policy regarding the liability of carriers under a bill of lading for goods lost or damaged in shipment. Allowing a shipper to bring common law breach of contract or negligence claims against a carrier for such loss or damage conflicts with this policy.")

B.    The RICO Claims are Preempted and not Properly Pleaded

A civil RICO claim requires allegations of the conduct of an enterprise through a pattern of racketeering activity that proximately caused injury to the plaintiff. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).

FRCP Rule 9(b)'s requirement that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity" applies to civil RICO fraud claims. *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir.1989). To avoid dismissal for inadequacy under Rule 9(b), Plaintiffs'

Complaint would need to "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Id*. at 1393 (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986)).

The elements required to plead a fraud claim are (1) misrepresentation (false representation, concealment or nondisclosure); (2) knowledge of falsity; (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Philipson & Simon v. Gulsvig* (2007) 154 Cal.App.4th 347, 363. California law requires the facts constituting the fraud to be alleged with sufficient specificity that the defendant can understand the nature of the charge being made. *Tarmann v. State Farm Mut. Auto. Ins. Co.* (1991) 2 Cal.App.4th 153, 157; *see City of Pomona v. Superior Court* (2001) 89 Cal.App.4th 793, 803. Thus, unlike other causes of action, fraud must be pled specifically. *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645. General and conclusory allegations do not suffice. *Id.* Thus, a complaint must allege facts that show "how, when, where, to whom, and by what means the representations were tendered." *Id*. "The requirement of specificity in a fraud action against a corporation requires the plaintiff to allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Lazar*, 12 Cal.4th at 645; *Tarmann*, 2 Cal.App.4th at 157.

Substantive violations of RICO are defined in 18 U.S.C. § 1962. Under § 1962(c), it is illegal for any person "to conduct or participate, directly or indirectly, in the conduct of [an] enterprise's affairs through a pattern of racketeering activity," where that enterprise affects interstate commerce. It is also illegal for any person to conspire to do so. 18 U.S.C. § 1962(d). A "pattern of racketeering activity" requires at least two predicate acts of racketeering activity, as defined in 18 U.S.C. § 1961(1), within a period of ten years. 18 U.S.C. § 1961(5). The Complaint does not identify two acts without any specificity of those events. The Complaint never attaches or

references any findings of facts as to two (2) predicate acts.

Under RICO's civil enforcement mechanism, "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962] may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee...." 18 U.S.C. § 1964(c). To have standing under § 1964(c), a civil RICO plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was "by reason of" the RICO violation, which requires the plaintiff to establish proximate causation. *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985).

*Albrecht v. Lund*, 845 F.2d 193, 195 (9th Cir.1988) if "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency, then... dismissal without leave to amend is proper." (internal quotation, citation omitted).

## V. THE PREEMPTIVE EFFECT OF FEDERAL LAW SURROUNDING INTERSTATE MOVES PRECLUDES STATE LAW CLAIMS

In *Roberts vs. North American Van Lines, Inc.,* (2004) 394 F. Supp. 2d 1174, an action was filed against a motor carrier for the following four causes of action: 1) breach of contract; 2) violation of the Consumers Legal Remedies Act, *(California Civil Code § 1750, et seq*.); 3) violation of *California Business and Professions Code § 17200*; and 4) violation of federal law *49 U.S.C. § 14704*. Roberts (as assignee of the shipper) received a "low ball" estimate of $5,000 to move her household goods; the price was then over $9,000 once the movers took the goods without consent of the shipper, and by the time the lawsuit was filed, shipper was unable to recover her goods without $26,000 in storage and other shipping services. Roberts, as the Plaintiff in the case at bar, alleged the actions of the moving company were separate and independent harms from the typical loss and damage of goods claims.

9

The Court dismissed the first three counts (including the Cal. B&P § 17200 claim) based, in part, on the preemptive effects of the *Adams Express Co.* case stating:

> Since Adams Express, courts have been nearly uniform in holding that the Carmack Amendment preempts state law remedies for loss or damage to goods shipped by common carriers. See e.g., *Mallory v. Allied Van Lines, Inc.*, 2003 U.S. Dist. LEXIS 19652, 2003 WL 22391296 (E.D.Pa.) (stating, "The Carmack Amendment preempts a state law cause of action if it involves loss of goods or damage to goods caused by the interstate shipment of those goods by an interstate carrier."); *North American Van Lines, Inc. v. Pinkerton Sec. Systems, Inc.*, 89 F.3d 452 (1996) (finding, "The Carmack Amendment thus preempts all state or common law remedies available to a shipper against a carrier for loss or damage to interstate shipments."); *Schultz v. Auld*, 848 F. Supp. 1497, 1502 (D. Idaho 1993) (stating, "Virtually every circuit to address this issue has held that the Carmack Amendment preempts state law remedies for loss or damage to goods shipped by common carriers.").

*Roberts*, 394 F. Supp. 2d at 1179-1180.

The *Roberts* Court further held:

> In light of the breadth of the federal regulation in this area, it is reasonable to infer that Congress left no room for the States to supplement it. *See Bank of America*, 309 F.3d at 558 (citing *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 884, 146 L. Ed. 2d 914, 120 S. Ct. 1913 (2000) (stating that in cases of field preemption, the "mere volume and complexity" of federal regulations demonstrate an implicit congressional intent to displace all state law.) In reaching this decision the Court is mindful that allowing Plaintiffs' claims to proceed would likely compromise the uniformity and certainty of the national scheme. Allowing state law to operate here conceivably could create a new scheme of potential liability for a carrier, where the right to assert additional causes of action depended on the location to or from which the shipper moved. This seems to be exactly what Congress was trying to avoid by entering this field.

*Id* at 1183.

## VI. FEDERAL, STATE, AND INTERNATIONAL POLICY SUPPORT THE LIMITATION OF LIABILITY

Deeply embedded within the transportation industry are limitations of liability. This case does not simply involve a moving company that deceptively included a low liability rate within the contract. The following citations illustrate the coverage: Throughout the transportation industry, including carriage by air (*see* Title 14 of the

Code of Federal Regulations Section 254.4 for baggage liability of $3,800 per passenger; Warsaw Convention, Article 22 allowing 250 francs per kilogram, about $21 per pound for baggage), sea (Carriage of Goods by Sea Act, Title 46 of the United States Code, App. Section 1304(5) allowing $500.00 total), and other modes of transportation all incorporate some limitation on liability to protect carriers internationally.

## VII. THE POLICY OF LIMITING LIABILITY IS TO KEEP TRANSPORTATION COSTS LOW

The Surface Transportation Board, an agency within the United States Department of Transportation, establishes rates for which household goods motor carriers can limit their liability exposure. A December 18, 2001 decision (Amendment 4 to Released Rates Decision No. MC-999, page 3) maintains that moving companies (motor carriers ) may limit their liability to 60¢ per pound per article since it keeps the transportation costs "low." Attached hereto as Exhibit 1 is a true and correct copy of said Surface Transportation Board report decision.

The case at bar involves claims by Plaintiffs seeking to plead around the clear policy within the state, federal, and international transportation laws designed to keep prices down, and keep liability reduced as well.

## VIII. NO PERSONAL LIABILITY OF DEFENDANT BATIA ZELIG FOR ACTS ALLEGED

Since the allegations include that the move was handled by the broker and motor carriers, including MASTER MOVING. INC. no allegations support any liability of the individual defendant BATIA ZELIG.

The Complaint never specifies any date, conduct, or even a communication with any individual acting outside their scope as agents of the broker and motor carriers.

Per *Cal. Civ. C. §1624(a)(2)*["The Statute of Frauds"], a contract is invalid unless it is in writing when it pertains to, "…A special promise to answer for the debt, default, or miscarriage of another." *See also, S. Glass Co. v. Consol. Inv. Corp.*, 1 Cal.

11

1  App. 2d 510, 511-512 (1934) (the president of investment company's oral agreement
2  with seller that the investment company would guarantee payment of merchandise
3  sold to customer, did not make investment company answerable for customer's
4  default). There is nothing in the Complaint that provides any such facts or attaches any
5  writing that demonstrates that BATIA ZELIG entered into a written agreement to
6  answer for the alleged corporate debts of the corporate defendants in this matter.

7  Separately, Plaintiffs suggest, but never allege alter ego within the Complaint.
8  There are no factual allegations supporting the individual liability.  Before the
9  doctrine of alter ego can be invoked, two elements must be alleged: "First, there must
10 be such a unity of interest and ownership between the corporation and its equitable
11 owner that the separate personalities of the corporation and the shareholder do not in
12 reality exist. Second, there must be an inequitable result if the acts in question are
13 treated as those of the corporation alone." *Sonora Diamond Corp. v. Superior Court*,
14 83 Cal.App.4th 523, 526, 99 Cal.Rptr.2d 824 (2000); *see also Mesler v. Bragg*
15 *Management Co.*, 39 Cal.3d 290, 300 (1985); 216 Cal.Rptr. 443, 702 P.2d 601
16 ("There is no litmus test to determine when the corporate veil will be pierced; rather
17 the result will depend on the circumstances of each particular case. There are,
18 nevertheless, two general requirements: `(1) that there be such unity of interest and
19 ownership that the separate personalities of the corporation and the individual no
20 longer exist and (2) that, if the acts are treated as those of the corporation alone, an
21 inequitable result will follow,'" quoting *Automotriz Del Golfo De California S.A. De*
22 *C.V. v. Resnick*, 47 Cal.2d 792, 796, 306 P.2d 1 (1957)). *AT & T v. Compagnie*
23 *Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir.1996).

24 California courts have relied on a host of other factors in finding alter ego
25 liability as well. *See Zoran Corp. v. Chen*, 185 Cal.App.4th 799, 811-12, 110
26 Cal.Rptr.3d 597 (2010) (listing factors that include "the holding out by an individual
27 that he is personally liable for the debts of the corporation...; the failure to maintain
28 minutes or adequate corporate records, and ... confusion of the records of ... separate

entities ...; ... identical equitable ownership [of] ... two entities; ... equitable owners ... dominati[ng] and control[ling]... two entities; ... the employment of the same employees and/or attorney ...;... failure to adequately capitalize a corporation; [a] total absence of corporate assets, and undercapitalization ...; ... concealment and misrepresentation of the identity of the responsible ownership, management and financial interest [of an entity], or concealment of personal business activities ...; ... disregard of legal formalities and ... failure to maintain arm's length relationships among related entities...; the use of the corporate entity to procure labor, services or merchandise for another person or entity ...; ... manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another ...; ... contracting with another with intent to avoid performance by use of a corporate entity as a shield against personal liability, or ... use of a corporation as a subterfuge of illegal transactions ...; and ... formation and use of a corporation to transfer to it the existing liability of another person or entity," quoting *Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft, LLP*, 69 Cal.App.4th 223, 249-50, 81 Cal.Rptr.2d 425 (1999) (in turn quoting *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal.App.2d 825, 838-40, 26 Cal.Rptr. 806 (1962). "No single factor is determinative, and ... a court must examine all the circumstances to determine whether to apply the doctrine." *VirtualMagic Asia, Inc. v. Fil-Cartoons, Inc.*, 99 Cal.App.4th 228, 245, 121 Cal.Rptr.2d 1 (2002).

Any attempt to have an individual be responsible for the corporate debt would be unenforceable under the statute of frauds, absent a written agreement to pay for the debts of another (*Cal. Civ. C. Sect. 1624*).

## IX. THE POLICY TO DISMISS APPLIES IN THIS CASE

In *Lopez v. Smith*, 203 F. 3d 1122, 1127 (9th Cir. 2000), the Court explained:

> [I]n a line of cases stretching back nearly 50 years, we have held that in dismissing for failure to state a claim under Rule 12(b)(6), "a district court should grant leave to amend even if no request to amend the

13

pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995); *see also Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Serv., Inc.*, 911 F.2d 242 (9th Cir.1990); *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696 (9th Cir. 1990); *Noll v. Carlson*, 809 F.2d 1446 (9th Cir.1987); *Bonanno v. Thomas*, 309 F.2d 320 (9th Cir.1962); *Sidebotham v. Robison*, 216 F.2d 816 (9th Cir.1954).

Plaintiffs' Complaint should be dismissed, except for a leave to amend to seek the 60 cents per pound per article.

### XIII. CONCLUSION

For the foregoing reasons, Plaintiff's Complaint should be dismissed except for a cause of action under the Carmack Amendment demanding 60 cents per pound per article.

Respectfully submitted,

DATED:   May 14, 2025         By: */s/ Jeffrey D. Nadel*
                                  JEFFREY D. NADEL, ATTORNEY FOR DEFENDANTS MASTER MOVING. INC.; and BATIA ZELIG

### CERTIFICATE OF SERVICE

I hereby certify that, on May 14, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States District Court by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the District Court's CM/ECF system.

*/s/ Jeffrey D. Nadel*